Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Tara A. Currie (SBN 323984)
tcurrie@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Chrome Hearts LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHROME HEARTS LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> URBAN SURVIVAL GEAR USA, an Unknown Business Entity; MICHAEL PAGE, an Individual; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: 5:21-CV-01777-JGB-SHK <br><br> **PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing:** <br><br> **Date:**     **August 28, 2023** <br> **Time:**     **9:00 a.m.** <br> **Courtroom:**     **1** <br><br> **Honorable Jesus G. Bernal** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 1

        A.      Chrome Hearts' Brand and Trademarks.......................................... 1

        B.      Defendants' Infringing Activities                  3

III.    LOCAL RULE 55-1 AND DEFENDANTS' FAILURE TO
        LITIGATE ................................................................................................. 4

IV.     LEGAL ARGUMENT ............................................................................... 4

        A.      This Court Has Jurisdiction Over This Action................................ 4

        B.      Legal Standard for Entry of Default and Default Judgment .......... 5

                1.      Possibility of Prejudice to Plaintiff ...................................... 6

                2.      Merits of Plaintiff's Substantive Claims and Sufficiency
                        of the Complaint..................................................................... 6

                        i.      Plaintiff's CH Cross Mark is Valid ........................... 7

                        ii.     Counterfeits are Presumed to be Confusing .............. 7

                        iii.    Even if the *Sleekcraft* Analysis Was Necessary,
                                Plaintiff's Allegations Establish a Likelihood of
                                Confusion.................................................................... 9

                3.      Sum of Money at Stake ........................................................ 12

                4.      Possibility of Dispute Concerning Material Facts ............... 12

                5.      Whether Default was Due to Excusable Neglect.................. 12

                6.      Strong Policy Underlying the Federal Rules of Civil
                        Procedure.............................................................................. 13

        C.      Plaintiff is Entitled to Statutory Damages Under the Lanham
                Act ........................................................................................................ 13

                1.      Profits Reaped by Defendant and Plaintiff's Revenue
                        Lost (Factors 1, 2, and 6) .................................................... 14

2.    Value of the Chrome Hearts Trademarks (Factor 3) ............15

3.    Deterrent Effect on Defendant and Others (Factor 4 and 7)............................................................................................15

3.    Willfulness of Defendant's Infringing Acts (Factor 5).........16

D.    Plaintiff is Entitled to Attorneys' Fees ..............................................17

E.    Plaintiff is Entitled to a Permanent Injunction ...............................18

IV.    CONCLUSION............................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Allergan Inc. v. Mira Life Grp., Inc.*,
2004 U.S. Dist. LEXIS *12-13 (C.D. Cal. 2004) ............................................... 17

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341, (9th Cir. 1979) ..................................................................... 7

*Apple Computer, Inc. v. Franklin Computer Corp.*,
714 F.2d 1240,  (3rd Cir., 1983) .................................................................. 19

*Applied Info. Scis. Corp. v. eBay, Inc.*,
511 F.3d 966, (9th Cir. 2007) ..................................................................... 7

*Avaya Inc. v. Pearce*,
2019 U.S. Dist. LEXIS 120233 (N.D. Cal. July 18, 2019) ................................ 8

*Bestway Inflatables & Material Corp. v. Doe*,
2022 U.S. Dist. LEXIS 6469 (N.D. Cal. Jan. 12, 2022) .................................. 12

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036,  (9th Cir. 1999) ................................................................... 7

*Cadence Design Sys., Inc. v. Avant! Corp.*,
125 F.3d 824, (9th Cir. 1997) ..................................................................... 19

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175, (9th Cir. 1988) ................................................................... 7

*Chanel, Inc. v. Lin*,
2010 U.S. Dist. LEXIS 61295, (N.D. Cal., 2010) ........................................... 18

*Chloe SAS v. Sawabeh Information Services Co.*,
2014 U.S. Dist. LEXIS 124433 (C.D. Cal. Sept. 5, 2014) ................................ 9

*Coach, Inc. v. Citi Trends, Inc.*,
2019 U.S. Dist. LEXIS 76417 (Apr. 5, 2019) ................................................ 8

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
528 F.3d 696 (9th Cir. 2008) ................................................................. 5, 17

*Dr. JKL Ltd. v. HPC IT Education Center*,
749 F.Supp.2d 1038 (N.D. Cal., 2010) ........................................................ 12

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388, (2006) ................................................................................. 18

*Eitel v. McCool*,
782 F.2d 1470, (9th Cir. 1986) ................................................................... 5

*Geddes v. United Financial Group*,
559 F.2d 557 (9th Cir. 1977) ..................................................................... 5

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   286 F.Supp.2d 284, (S.D.N.Y. 2003) ..................................................... 8

*Harris v. Emus Records Corp.*,
   734 F.2d 1329, (9th Cir.1984) .......................................................... 14

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628, (9th Cir. 2008) ............................................................ 7

*Junker v. HDC Corporation*,
   2008 U.S. Dist. LEXIS 111104 at * 7, 2008 WL 3385819 (N.D. Cal.
   2008) ................................................................................................. 6

*Kinsley Tech. Co. v. Ya Ya Creations, Inc.*,
   2022 U.S. Dist. LEXIS 156722 (C.D. Cal. Aug. 30, 2022) .............................. 9

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   982 F.2d 1400, (9th Cir.1993) ......................................................... 16

*Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries,
   Inc.*,
   2007 U.S. Dist. LEXIS 66816 *4-6 (N.D. Ill. 2007) ........................................ 14

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936, (9th Cir. 2011) ............................................................ 8

*Microsoft Corp. v. Atek 3000 Computer Inc.*,
   2008 U.S. Dist. LEXIS 56689 (E.D.N.Y., 2008) ............................................ 19

*Microsoft Corp. v. Coppola*,
   2007 U.S. Dist. LEXIS *12 (N.D. Cal. 2007) .................................................. 14

*Microsoft Corp. v. Nop*,
   549 F.Supp.2d 1233, (E.D. Cal., 2008) ...................................................... 13

*Network Automation Inc. v. Advanced Sys. Concepts*,
   638 F.3d 1137, (9th Cir. 2011) ........................................................ 10

*Partners for Health & Home, L.P. v. Seung Wee Yang*,
   2011 U.S. Dist. LEXIS 130921 (C.D. Cal. Oct. 28, 2021).............................. 8

*PepsiCo, Inc. v. Cal. Sec. Cans.*,
   238 F.Supp.2d 1172, (C.D. Cal. 2002) ..................................................... 9

*Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*
   219 F.R.D. 494, 499 (C.D. Cal. 2003).......................................... 6, 12, 13

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir.1982) .......................................................... 16

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*,
   2015 U.S. Dist. LEXIS 13168 at * 9 (C.D. Cal. Sept. 29, 2015) ..................... 5

*Sara Lee Corp. v. Bags of New York, Inc.*,
   36 F.Supp.2d 161, (S.D.N.Y., 1999) .................................................... 14

*Seiko Epson Corp. v. Koshkalda*,
    799 Fed. Appx. 463, 467 (9th Cir. 2019) (same)..................................5

*Sream, Inc. v. Sahebzada*,
    2019 U.S. Dist. LEXIS 86785 at *9 (N.D. Cal. Mar. 7, 2019)..........................7

*Sream, Inc. v. Singh*,
    2018 U.S. Dist. LEXIS 189133 (E.D. Cal. Nov. 2, 2018)..................................9

*Starbucks Corp. v. Heller*,
    2015 U.S. Dist. LEXIS 200293 (C.D. Cal. May 28, 2015) ..........................8

*Tiffany, Inc. v. Luban*,
    282 F.Supp.2d 123, (S.D.N.Y., 2003) ..................................13

*Truong Giang Corp. v. Twinstar Tea Corp.*,
    2007 U.S. Dist. LEXIS 100237 (N.D. Cal. Mar. 22, 2007) ..........................10

*UGG Holdings, Inc. v. Severn*,
    2005 U.S. Dist. LEXIS 45783 (C.D. Cal. Feb. 23, 2005) ..........................10

*Vapor Spot, LLC v. Breathe Vape Spot, LLC*,
    2015 U.S. Dist. LEXIS 188008 (C.D. Cal. Sept. 15, 2015) ..........................11

*Xen, Inc. v. Citrix Sys.*,
    2012 U.S. Dist. LEXIS 153787 (C.D. Cal. Oct. 25, 2012)..........................10

*Young v. 3.1 Phillip Lim, LLC*,
    2016 U.S. Dist. LEXIS 158931 (C.D. Cal. Nov. 16, 2016) ..........................10

## STATUTES

15 U.S.C. § 1114(1) ..................................8

15 U.S.C. § 1116(a)..................................18

15 U.S.C. § 1127 ..................................8

15 U.S.C. 1117(c) ..................................17

50 U.S.C. App. § 521 ..................................4

U.S.C. § 1117(c) ..................................16

## RULES

F.R.Civ.P. 55(b)(2)..................................4

Fed. R. Civ. Proc. 8(d) ..................................5

FRCP 55 ..................................1

FRCP Rule 55(b) ..................................5

Local Rule 55-1 ..................................1, 4

PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.  <u>INTRODUCTION</u>**

3      On October 21, 2021, plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome

4 Hearts") filed a Complaint against defendants Urban Survival Gear USA and Michael

5 Page ("Defendants") for Trademark Infringement and False Designation of Origin

6 under the Lanham Act, as well as related claims of trademark infringement and unfair

7 competition under the statutory and common law of the state of California.

8 Declaration of Tara A. Currie ("Currie Decl."), ¶ 2.  The Complaint arises out of

9 Defendants' importation, manufacturing, production, distribution, advertisement,

10 marketing, offering for sale, and/or sale of a counterfeit jewelry product bearing an

11 unauthorized reproduction of Plaintiff's federally registered CH Cross mark (the

12 "Accused Product"). *Id.*

13      Defendants failed to file a responsive pleading to the Complaint or otherwise

14 make an appearance in this action.  As a result, the Clerk of the Court entered default

15 against Defendants on March 24, 2022. Currie Decl., ¶¶ 3, 4.  Plaintiff has satisfied the

16 requirements of FRCP 55 and Local Rule 55. *Id.* at ¶ 6.  Accordingly, Plaintiff

17 respectfully requests that this Court grant its Motion for Default Judgment against

18 Defendants and award $105,599.99 and injunctive relief as a result.

19 **II.  <u>STATEMENT OF FACTS</u>**

20     **A.  <u>Chrome Hearts' Brand and Trademarks</u>**

21      Chrome Hearts has been designing, manufacturing, and selling artistically styled

22 leather goods, apparel, jewelry, and accessories since 1988. Currie Decl., Exh. A at ¶

23 10.  Chrome Hearts sells a wide variety of quality artistic products, including leather

24 pants, leather jackets, leather vests, sterling silver jewelry, including necklaces,

25 bracelets, rings and wallet chains, belt buckles, and a wide collection of other products,

26 including furniture, eyewear, and crystal ware. *Id.* at ¶ 11.  Chrome Hearts products are

27 sold in the exclusive Chrome Hearts stores throughout the world, on its official website

28 www.chromehearts.com, and in select specialty stores, such as Selfridges of London,

Bergdorf Goodman in New York, and the United Arrows and Dover Street Market Ginza boutiques in Japan. *Id.* at ¶ 12. Virtually all Chrome Hearts products, including clothing, denim, and jewelry, are handmade in Los Angeles by Chrome Hearts' craftsmen. *Id.* at ¶ 16. The level of expert workmanship exercised by these individuals is superior and conforms with the strict standards established by Chrome Hearts. *Id.*

Such high artistry is associated with Chrome Hearts' well recognized trademarks which include, but are not limited to, the following trademark registration for the "CH Cross":

| Chrome Hearts' Mark | U.S. Reg. No. | Goods/Services |
|---|---|---|
|  | 3,605,860 | Jewelry, namely, rings, earrings, pendants, necklaces, bracelets, cuff bracelets, cuff links, watch bracelets and key rings made of precious metals. |

Currie Decl., Exh. A at ¶¶ 13, 17-18, Exh. E.

Chrome Hearts has always devoted substantial time, effort, and money designing, developing, advertising, promoting, and marketing its products, and spends on average over $1 million per year on advertising, promoting, and marketing the Chrome Hearts brand. Currie Decl., Exh. A at ¶ 19. As a result of its efforts, Chrome Hearts has sold over a billion dollars' worth of goods, all bearing one or more of the Chrome Hearts' federally registered trademarks, including the CH Cross. *Id.* The registration for the CH Cross mark identified above is valid, subsisting, and incontestable. *Id.* at ¶ 20.

Chrome Hearts has continuously used the CH Cross in interstate commerce in connection with the sale, distribution, promotion, and advertising of its goods since their respective dates of use. *Id.* at ¶ 21. As identified in the trademark registration attached hereto, Chrome Hearts has been using the CH Cross on jewelry in commerce for approximately 34 years. Currie Decl., Exh. E. Through longstanding use, advertising, and registration, the CH Cross has achieved a high degree of consumer recognition and constitutes a famous mark. Currie Decl., Exh. A at ¶ 19-23. Due to

Chrome Hearts' long use, extensive sales, significant advertising, and promotional activities, the CH Cross has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. *Id.*

**B.    Defendants' Infringing Activities**

The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale of jewelry that bears a mark identical, substantially indistinguishable, or confusingly similar to the CH Cross, an exemplar of which is shown below:



Currie Decl., Exh. A at ¶ 24; Exh. G.

Prior to filing the initial Complaint, Plaintiff discovered the Accused Product being advertised, offered for sale, and/or sold through Defendants' Etsy Account, UrbanSurvivalGearUSA, and also discovered Defendants' website, www.urbansurvivalgearusa.com. Currie Decl., ¶ 8; Exh. A at ¶ 24-25, Exhs. F, G.  In 2021, Plaintiff made a purchase of the Accused Product from Defendants' Etsy page and confirmed that it contained an inauthentic mark. Currie Decl., ¶ 8, Exhs. F, G.  The shipping label identified that the Accused Product was shipped from "M. Page- Urban Survival Gear USA". *Id.*

Chrome Hearts never authorized Defendants to manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the CH Cross. Currie Decl., Exh. A at ¶ 28.  As a result of using a mark that is identical, substantially

indistinguishable, or confusingly similar to the CH Cross, the mark on the Accused Product is very likely to cause confusion for consumers, including Plaintiff's customers, who, in the post-sale setting, are led to believe that the Accused Product is a genuine good originating from, associated with, or otherwise approved by Chrome Hearts. *Id.* at ¶¶ 29-30, 34, 41, 43, 60.

## III.   LOCAL RULE 55-1 AND DEFENDANTS' FAILURE TO LITIGATE

Pursuant to Local Rule 55-1, applications for default judgment must include: "(a) [w]hen and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent person[;] (d) [t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)." Local Rule 55-1.

As Defendants failed to file a responsive pleading to the Complaint or otherwise make an appearance in this action, the Clerk of the Court entered default against Defendants on March 24, 2022. Currie Decl., ¶¶ 2-4, Exhs. A-D.  Further, Defendant Urban Survival Gear USA ("Urban Survival") appears to be a business entity, and thus is not an infant, incompetent person, in military service, or otherwise exempted under the Servicemembers Civil Relief Act (50 U.S.C. App. § 521). Currie Decl., ¶ 5.  There is no evidence that suggests that Mr. Page is an infant, incompetent person, in military service, or otherwise exempted under the Servicemembers Civil Relief Act. *Id.*

Although Defendants have not appeared in the action, Plaintiff gave notice of this Motion via First Class U.S. Mail at the address which Defendants were served with process. Currie Decl., ¶ 6.  Therefore, all of the requirements of Local Rule 55-1 have been met.

## IV.   LEGAL ARGUMENT

### A.     This Court Has Jurisdiction Over This Action

This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over

Plaintiff's state and common law claims under 28 U.S.C. § 1367(a) because they are related to the federal claims such that they form part of the same case or controversy and derive from a common nucleus of operative facts. Currie Decl., Exh. A at ¶¶ 1-2. The Court may properly exercise personal jurisdiction over Defendants because they both reside in California. *Id.* at ¶¶ 6-7.  Venue is also proper under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the claims arose in this District and Defendants reside in this District. *Id.* at ¶¶ 4, 6-7.

### B.    <u>Legal Standard for Entry of Default and Default Judgment</u>

Pursuant to FRCP Rule 55(b), a default judgment may be entered by the clerk as well by the court.  Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for a judgment by default.  In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)

In considering the seven factor *Eitel* test, the court takes the factual allegations of the complaint as true upon default, "as the court **must**", except for those relating to the amount of damages. Fed. R. Civ. Proc. 8(d); *Rolex Watch U.S.A., Inc. v. Watch Empire LLC,* 2015 U.S. Dist. LEXIS 13168 at * 9 (C.D. Cal. Sept. 29, 2015) (emphasis added, citations and quotations omitted); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (allegations of willful infringement taken as true upon default); *Seiko Epson Corp. v. Koshkalda*, 799 Fed. Appx. 463, 467 (9th Cir. 2019) (same); *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977).

### 1.    Possibility of Prejudice to Plaintiff

Plaintiff will suffer prejudice if default judgment is not entered because Plaintiff would be without any other course of recovery. *See Junker v. HDC Corporation*, 2008 U.S. Dist. LEXIS 111104 at * 7, 2008 WL 3385819 (N.D. Cal. 2008).  Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor. *Id.*; *Phillip Morris, USA, Inc. v. Castworld Prods., Inc.* 219 F.R.D. 494, 499 (C.D. Cal. 2003)

Defendants have ignored this lawsuit by failing to file a responsive pleading to the Complaint or otherwise make an appearance in this case.  While Defendants issued Plaintiff a single letter that was "copied to the Judge", they have made no formal answer or attempt to properly defend themselves in Court. Currie Decl., Exh. D. Defendants' lack of participation in the lawsuit leaves Plaintiff without any verifiable information as to their sales of the Accused Product and whether the product has continued to be sold.  Through the sale and offer for sale of the Accused Product, Defendants have injured Chrome Hearts' reputation and goodwill as well as its business.  Specifically, consumers who observe Defendants' counterfeit product in the post-sale setting will be confused as to its source, believing it to be a genuine Chrome Hearts product, and will likely be disappointed by the inferior quality, design, and style of the Accused Product.

As such, if default judgment is not granted, Plaintiff will be left with no recourse for injuries to its reputation and business caused by Defendants' infringing activities, as well as for its efforts in litigating this case. Accordingly, the first *Eitel* factor is satisfied.

### 2.    Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

With respect to the merits of Plaintiff's substantive claims (second *Eitel* factor) and the sufficiency of the Complaint (third *Eitel* factor), Plaintiff has set forth a well-pleaded Complaint and has listed all the essential facts and elements as to each of its

causes of action against Defendants.  As with the other *Eitel* factors, courts accept the allegations as true when reviewing Plaintiff's claims. *Phillip Morris*, 219 F.R.D. at 499-500.

Plaintiff's four causes of action for Federal Trademark Infringement, False Designation of Origin, Unfair Competition under Cal. Bus. & Prof. Code § 17200, and Common Law Trademark Infringement and Unfair Competition are analyzed under the same test for federal trademark infringement because they all go to the essential question of likelihood of confusion. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  To prevail on its trademark infringement claim, Plaintiff must prove that it (1) has a valid, protectable mark and (2) that the mark is likely to cause confusion. *Sream, Inc. v. Sahebzada*, 2019 U.S. Dist. LEXIS 86785 at *9 (N.D. Cal. Mar. 7, 2019).

### i.      Plaintiff's CH Cross Mark is Valid

Registration of a mark with the U.S. Patent and Trademark Office is prima facie evidence of the validity of the registered mark and the registrant's exclusive right to use the mark on the goods and services. *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969-970 (9th Cir. 2007) (noting one of the ways to satisfy that plaintiff has a protectable mark is to establish that it has a federally registered mark).  Here, Plaintiff has sufficiently alleged that the CH Cross is federally registered. Currie Decl., Exh. A at ¶¶ 18-20, Exh. E.  Therefore, the first prong of Plaintiff's trademark infringement claim is satisfied.

### ii.     Counterfeits are Presumed to be Confusing

When analyzing whether a likelihood of confusion exists, the Ninth Circuit typically employs an eight-factor test for determining likelihood of confusion. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  However, likelihood of confusion is presumed in a case where, as here, Defendants have used a counterfeit

mark. *Phillip Morris USA, Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1073 (C.D. Cal., 2004) (citing to *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003) ["counterfeits by their very nature, cause confusion"].)  Moreover, the Ninth Circuit allows a presumption of the likelihood of confusion, rendering an analysis of the *Sleekcraft* factors unnecessary. *Brookfield Communs.,* 174 F.3d at 1047 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course"); *Starbucks Corp. v. Heller*, 2015 U.S. Dist. LEXIS 200293 at \*21-23 (C.D. Cal. May 28, 2015).

An infringing mark amounts to a counterfeit mark if the infringing mark "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  Plaintiff has sufficiently pled a claim for trademark counterfeiting within its first cause of action for trademark infringement under 15 U.S.C. § 1114(1). *See Partners for Health & Home, L.P. v. Seung Wee Yang*, 2011 U.S. Dist. LEXIS 130921 at \*20 (C.D. Cal. Oct. 28, 2021) ("Trademark infringement under 15 U.S.C. § 1114(1) also constitutes trademark counterfeiting when the infringer uses a 'counterfeit mark'"); *Avaya Inc. v. Pearce*, 2019 U.S. Dist. LEXIS 120233 at \*10 (N.D. Cal. July 18, 2019) (rejecting the argument that a claim for trademark infringement and a claim for counterfeit must be pled separately).

A well-pleaded counterfeiting claim involves (1) a non-genuine mark identical to or substantially indistinguishable from the plaintiff's registered, genuine mark, where (2) the plaintiff's genuine mark was registered for use on the same goods to which the infringer applied the non-genuine mark. *Coach, Inc. v. Citi Trends, Inc.,* 2019 U.S. Dist. LEXIS 76417 at \*7 (Apr. 5, 2019) (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 658 F.3d 936, 946 (9th Cir. 2011).  Here, Plaintiff has sufficiently pled that Defendants, without authorization, sold products bearing marks "identical" to the CH Cross mark. Currie Decl., Exh. A at ¶¶ 24, 34; *see Starbucks Corp.*, 2015 U.S. Dist. LEXIS 200293 at \*20-23 (such allegations suffice to establish that defendants are using counterfeit marks and it was thus unnecessary to perform the

likelihood of confusion analysis). Further, the CH Cross is registered in Class 014 for jewelry, the same type of goods that Defendants used its counterfeit mark on. Currie Decl., Exh. A at ¶¶ 19, 26, Exhs. E.

Therefore, Plaintiff has sufficiently pled its counterfeiting claim, and by extension, the trademark infringement claim. *See Chloe SAS v. Sawabeh Information Services Co.*, 2014 U.S. Dist. LEXIS 124433 at *16 (C.D. Cal. Sept. 5, 2014) (if plaintiff shows that defendants have used counterfeit trademarks in commerce, the claim for trademark infringement is also satisfied).

**iii. Even if the *Sleekcraft* Analysis Was Necessary, Plaintiff's Allegations Establish a Likelihood of Confusion.**

Although likelihood of confusion is presumed by way of Plaintiff's counterfeit allegations, Plaintiff has also adequately pled that the Accused Product is likely to cause confusion. Currie Decl., Exh. A at ¶¶ 29, 30, 36, 41, 43, 60, 61. Some courts have held these allegations to be sufficient to satisfy the second prong of the trademark infringement analysis for purposes of a default judgment motion. *See Phillip Morris,* 219 F.R.D. at 499; *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1175-76 (C.D. Cal. 2002) *Sream, Inc. v. Singh*, 2018 U.S. Dist. LEXIS 189133 at *17-20 (E.D. Cal. Nov. 2, 2018); *Rolex Watch,* 2015 U.S. Dist. LEXIS 131668 at *8-12.

Even if the Court decides to take a step further to analyze the eight *Sleekcraft* factors, Plaintiff has sufficiently pled facts relevant to most of the factors – (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care exercised by purchaser; (7) defendant's intent; and (8) likelihood of expansion of the product lines. *AMF, Inc.,* 599 F.2d at 348-49. In the context of the Web, such as here, the three most important factors are proximity of the goods, similarity of the marks, and the simultaneous use of the Web as a marketing channel. *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, 2022 U.S. Dist. LEXIS 156722 at *10 (C.D. Cal. Aug. 30, 2022).

The proximity of goods, similarity of marks, and marketing channels factors weigh in favor of Plaintiff.  Plaintiff alleges that the CH Cross is used on jewelry products and accessories, the same type of good as the Accused Product. Currie Decl., Exh. A at ¶¶ 18, 24, Exh. E.  Plaintiff has also alleged that the mark on the Accused Product is identical or confusingly similar to the CH Cross mark and provided pictures of its registered mark as well as the Accused Product. Currie Decl., Exh. A at ¶¶ 18, 24, 34, 41.  Lastly, Plaintiff and Defendants both use the Web as a marketing channel; Plaintiff has alleged that it sells products online and Defendants similarly sell the Accused Product online. *Id.* at ¶¶ 12, 25.

A review of the remaining factors also show that Plaintiff has sufficiently alleged likelihood of confusion.  As for the strength of the mark factor, strength is examined by its conceptual strength and commercial strength. *Network Automation Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011).  Conceptual strength refers to the classification of a mark along a spectrum of generally increasing inherent distinctiveness as generic (afforded no protection), descriptive or suggestive (afforded moderate protection), or arbitrary/fanciful (afforded maximum protection). *Id; Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 U.S. Dist. LEXIS 100237 at *14 (N.D. Cal. Mar. 22, 2007).

Here, Plaintiff has sufficiently pled that its marks are conceptually strong by alleging that the CH Cross mark is federally registered and incontestable. Currie Decl., Exh. A at ¶¶ 18, 20, 33; *see UGG Holdings, Inc. v. Severn*, 2005 U.S. Dist. LEXIS 45783 at *24-25 (C.D. Cal. Feb. 23, 2005) (holding that because plaintiff's mark was registered, it is "presumed to be distinctive and should be afforded the utmost protection" when analyzing the strength of the mark factor); *Xen, Inc. v. Citrix Sys.,* 2012 U.S. Dist. LEXIS 153787 at *8 (C.D. Cal. Oct. 25, 2012) ("Registration indicates strength"); *Young v. 3.1 Phillip Lim, LLC,* 2016 U.S. Dist. LEXIS 158931 at *8 (C.D. Cal. Nov. 16, 2016) ("an incontestable mark is considered to have a high conceptual strength.") (citations omitted).

1      When analyzing commercial strength, courts look to evidence such as

2  advertising expenditures, length of exclusive use, public recognition, and uniqueness.

3  *Vapor Spot, LLC v. Breathe Vape Spot, LLC,* 2015 U.S. Dist. LEXIS 188008 at *22

4  (C.D. Cal. Sept. 15, 2015); *see Network Automation*, 638 F.3d at 1149-50 (holding that

5  commercial strength is an evidence-intensive inquiry which is unnecessary at the

6  preliminary injunction stage).  Plaintiff has sufficiently pled facts relating to

7  commercial strength by alleging that it spends over $1 million per year on advertising

8  the Chrome Hearts brand and trademarks and sold over a billion dollars' worth of

9  clothing featuring one or more of the marks. Currie Decl., Exh. A at ¶ 19.  Plaintiff has

10  also alleged that its brand and marks have achieved a high degree of consumer

11  recognition. *Id.* at ¶¶ 10-23.  Lastly, Plaintiff has pled that it has continuously used the

12  CH Cross since its date of first use; specifically, the attached registration certificates

13  for the CH Cross identifies that it has been in use for at least 34 years. *Id.* at ¶¶ 18, 20-

14  23, Exh. E.  Therefore, the strength of the mark factor is satisfied.

15      The fourth factor, actual confusion, is neutral as Plaintiff does not have any facts

16  relating to actual confusion for Defendants' failure to participate in the litigation and

17  any discovery.  However, evidence of actual confusion is not necessary to a finding of

18  likelihood of confusion under the Lanham Act. *Network Automation*, 638 F.3d at 1151.

19  As to the seventh factor for intent, Plaintiff has sufficiently alleged that Defendants

20  acted willfully and intentionally in committing the alleged infringement. Currie Decl.,

21  Exh. A at ¶¶ 30, 36, 49, 59, 61.

22      While Plaintiff does not have facts relative to the sixth and eighth factors, on

23  balance, the *Sleekcraft* factors weigh in favor of Plaintiff, especially those important in

24  the internet context. *See Kinsley Tech.*, 2022 U.S. Dist. LEXIS 156722 at *10 (Courts

25  are to apply the *Sleekcraft* factors flexibly; the factors are intended as an adaptable

26  proxy for consumer confusion, not a rote checklist) (citations and quotations omitted).

27  Therefore, Plaintiff satisfies the second and third *Eitel* factors given the allegations are

28  taken as true upon default as to liability.

### 3.    Sum of Money at Stake

With respect to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *Pepsico*, 238 F.Supp.2d at 1176   Here, Defendants sold the Accused Product containing a counterfeit mark, thereby causing damage to Chrome Hearts' reputation and goodwill. Plaintiff is thus entitled to recover statutory damages under 15 U.S.C. § 1117(c) as counterfeit marks are involved. *Dr. JKL Ltd. v. HPC IT Education Center,* 749 F.Supp.2d 1038 (N.D. Cal., 2010). Congress has tailored the amount of money at stake to the underlying misconduct by permitting $1,000 to $200,000 per counterfeit mark per type of good for non-willful infringement, and up to $2 million per counterfeit mark per type of good for willful infringement. 15 U.S.C. § 1117(c); *see Bestway Inflatables & Material Corp. v. Doe*, 2022 U.S. Dist. LEXIS 6469 at *15 (N.D. Cal. Jan. 12, 2022).

Here, there is one type of good – a bracelet – containing one imitation CH Cross mark.  Accordingly, the amount of money at stake consists of up to $200,000 for non-willful conduct and up to $2 million for willful conduct as Plaintiff requests statutory damages under Section 1117(c).

### 4.    Possibility of Dispute Concerning Material Facts

Plaintiff has satisfied the fifth *Eitel* factor as well since all well-pleaded facts in the Complaint are to be taken as true upon entry of default.  In this case, Plaintiff has filed a well-pled complaint alleging the facts necessary to establish its claims, and this Court has entered default against the Defendants.  Consequently, there is no dispute regarding the material averments of the Complaint, and the likelihood that any genuine issue exists is at best, remote. *See Phillip Morris, supra*, 219 F.R.D. at 500.

### 5.    Whether Default was Due to Excusable Neglect

While Defendants issued a letter to Plaintiff that was apparently "copied to the Judge", Defendants failed to file a formal Answer with the Court or otherwise make an appearance in this case, necessitating the instant Motion.  Defendants have had almost

2 years to make an appearance and defend themselves, but ignored the lawsuit.  This cannot be considered to be excusable neglect.

**6.    Strong Policy Underlying the Federal Rules of Civil Procedure**

Finally, the mere existence of FRCP 55(b) indicates that the seventh *Eitel* factor is not dispositive alone. *Phillip Morris, supra,* 219 F.R.D. at 501.  Defendants have failed to set forth any type of defense to this action.  Under FRCP 55(a), termination of a case before a hearing on the merits is allowed whenever a defendant fails to defend an action. *Phillip Morris, supra,* 219 F.R.D. at 501; *see also Pepsico, supra,* 238 F.Supp.2d at 1177.  Therefore, the seventh factor also favors granting a default judgment in favor of Plaintiff.

**C.    Plaintiff is Entitled to Statutory Damages Under the Lanham Act**

Section 1117(c) of the Lanham Act provides, in pertinent part:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff  may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of–

> (1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark.

15 U.S.C. 1117(c).

While the Lanham Act does not provide guidelines for courts to determine an appropriate award of statutory damages, courts have found guidance in the case law relating to the analogous provision for statutory damages in the Copyright Act, 17 U.S.C. § 504(c). *Tiffany, Inc. v. Luban,* 282 F.Supp.2d 123, 125 (S.D.N.Y., 2003); *Microsoft Corp. v. Nop,* 549 F.Supp.2d 1233, 1237-38 (E.D. Cal., 2008).  Pursuant to 17 U.S.C. § 504(c), courts consider the following factors in determining the amount of statutory damages to award:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

*Tiffany,* 282 F.Supp.2d at 125; *Microsoft,* 549 F.Supp.2d at 1237.

"A court has wide discretion to determine the amount of statutory damages between the statutory maxima and minima." *Microsoft Corp. v. Coppola*, 2007 U.S. Dist. LEXIS *12 (N.D. Cal. 2007) (citing *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984).

## 1.      Profits Reaped by Defendant and Plaintiff's Revenue Lost (Factors 1, 2, and 6)

In this case, each of these factors weigh in favor of enhanced statutory damages. Defendants have not appeared in this case, leaving Plaintiff without any means to accurately evaluate the first two factors.  In fact, the absence of, or failure to maintain, records of infringing activities is quite common amongst trademark infringers.  It is this precise reason that Congress amended the Lanham Act to provide for statutory damages. *Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.,* 2007 U.S. Dist. LEXIS 66816 *4-6 (N.D. Ill. 2007). The Senate Report notes:

> The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters.

*Id.* (citing to Senate Report No. 104-177, S. REP. 104-177, *10 (1995); *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 165 (S.D.N.Y., 1999).

Indeed, calculating the expenses saved and profits reaped by Defendants or the

revenues lost by Plaintiff have been rendered impossible due to Defendants' failure to respond to the Complaint. *Microsoft, supra,* 549 F.Supp.2d at 1238 (holding that a lack of evidence as to the first two prongs did not preclude an award of statutory damages in plaintiff's motion for default judgment.)

### 2.    Value of the Chrome Hearts Trademarks (Factor 3)

The Chrome Hearts Marks are highly valuable.  Chrome Hearts began selling accessories and related products in connection with the Chrome Hearts Marks since 1988. Currie Decl., Exh. A at ¶ 10.  The Chrome Hearts Marks have been used in interstate commerce to identify and distinguish Chrome Hearts' high quality goods, including leather pants, leather jackets, leather vests, sterling silver jewelry, necklaces, bracelets, rings, wallet chains, belt buckles, furniture, eyewear, and crystal ware, and a wide collection of other products. *Id.* at ¶¶ 11-13, 16, 19-23.

Chrome Hearts spends on average more than $1 million per year on advertising, promoting, and marketing the Chrome Hearts brand. *Id.* at ¶ 19.  As a result of its efforts, Chrome Hearts has sold more than a billion dollars' worth of goods, all bearing one or more of the Chrome Hearts Marks. *Id.*  As a further result of Chrome Hearts' long use, extensive sales, and significant advertising and promotional activities, the Chrome Hearts Marks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. *Id.* at ¶¶ 19-23. More specifically, because of its expert craftmanship, high artistry, and uniqueness in the designs, Chrome Hearts' products bearing the Chrome Hearts Marks have even been recognized by various celebrities and by the Council of Fashion Designers of America. *Id.* at ¶¶ 14, 15.  The Chrome Hearts Marks, including the CH Cross, are a symbol of Chrome Hearts' quality, reputation, and goodwill and has never been abandoned.  Therefore, this factor weighs heavily in favor of a higher amount of statutory damages.

### 3.    Deterrent Effect on Defendant and Others (Factor 4 and 7)

The fourth and seventh factors relate to the deterrence policy underlying 15

U.S.C. § 1117(c).  The Ninth Circuit has also articulated a deterrence policy to discourage trademark infringement.  *See Playboy Enters., Inc. v. Baccarat Clothing Co.,* 692 F.2d 1272 (9th Cir.1982); *Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1406 (9th Cir.1993).  In *Playboy Enterprises,* the Ninth Circuit noted:

> In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner… For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."

In *Philip Morris*, the Court awarded $1 million per mark (the statutory maximum amount of damages at the time) against defendant despite the fact that the counterfeit cigarettes were seized by U.S. Customs and defendant had yet to sell or distribute any of them. *Phillip Morris,* 219 F.R.D. at 502.  The court reasoned that statutory damages should be awarded to plaintiff under the Lanham Act in order to deter defendant and similarly situated counterfeiters from future trademark infringement and to compensate plaintiff for the damages caused by defendant's infringing activities. *Id.* at 501; *see also Microsoft,* 549 F.Supp.2d at 1238.

Consistent with the ruling in *Philip Morris*, Plaintiff seeks to discourage Defendants and those similarly situated to them from selling, offering for sale, or distributing products bearing counterfeit reproductions of the CH Cross mark.  Plaintiff has often been the target of trademark infringement due to its notoriety.  If Defendants were not required to pay statutory damages, Defendants' and other's infringing activities would likely continue and expand, causing further damage to Plaintiff, the Chrome Hearts brand, and the consuming public.

### 3.    Willfulness of Defendant's Infringing Acts (Factor 5)

Under section 1117(c) of the Lanham Act, a plaintiff can recover statutory damages in an amount "not less than $1,000 or more than $200,000 per counterfeit

mark per type of goods or services sold, offered for sale, or distributed" for non-willful infringement. 15 U.S.C. 1117(c).  Where the court finds that use of the counterfeit mark was *willful*, plaintiffs are entitled to up to $2 million in statutory damages per counterfeit mark per type of goods sold, offered for sale, or distributed. 15 U.S.C. § 1117(c); *Philip Morris*, 219 F.R.D. at 501.

An allegation of willful trademark infringement is deemed true on default. *Derek Andrew, Inc. v. Poof Apparel Corp*., 528 F.3d 696, 698 (9th Cir., 2008). Here, Plaintiff has properly alleged that Defendants' conduct was willful and done with the intent to harm Plaintiff and deceive the public. Currie Decl., Exh. A at ¶¶ 30, 36, 49, 59, 60, 61.  As discussed above, Defendants' willful counterfeiting of the CH Cross mark mandates an award of up to $2 million for under 15 U.S.C. § 1117(c).  However, Plaintiff will only claim **$100,000**, which amounts to only .05% of the recoverable damages.

### D.    <u>Plaintiff is Entitled to Attorneys' Fees</u>

Lastly, under 15 U.S.C. section 1117(a), Plaintiff is entitled to an award of its attorneys' fees "in exceptional cases."  In the context of a default judgment, awards of attorneys' fees have been upheld solely because, by entry of default judgment, the district court determined, as alleged in plaintiffs' complaint, that defendants' acts were committed knowingly, maliciously, and oppressively, and with an intent to injure plaintiffs. *Derek Andrew,* 528 F.3d at 702.

As stated above, Plaintiff alleged that Defendants' conduct was deliberate, willful, and intended to confuse the public and to injure Plaintiff. Currie Decl., Exh. A at ¶¶ 30, 36, 49, 59, 60, 61.  Defendants' failure to timely respond to the Complaint and subsequent entry of default serve as admissions to these allegations, entitling Plaintiff to its fees. *See e.g. Allergan Inc. v. Mira Life Grp., Inc.*, 2004 U.S. Dist. LEXIS *12-13 (C.D. Cal. 2004).  According to Local Rule 55-3, where the amount of judgment sought is between $50,000.01-$100,000 as is here, the attorneys' fees award is $3,600 plus 4% of the amount over $50,000.  As Plaintiff seeks recovery in the

amount of $100,000, the amount of reasonable attorneys' fees that should be awarded is **$5,599.99**

### E.     Plaintiff is Entitled to a Permanent Injunction

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *Pepsico,* 238 F.Supp.2d at 1177; 15 U.S.C. § 1116(a).  In seeking a permanent injunction, the plaintiff must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

Absent injunctive relief, Plaintiff will suffer irreparable harm to its brand and reputation as the Accused Product is an identical or confusingly similar reproduction of the CH Cross mark. *See Chanel, Inc. v. Lin*, 2010 U.S. Dist. LEXIS 61295, *34 (N.D. Cal., 2010) (where plaintiff established likelihood of confusion by showing defendant's use of counterfeit Chanel Marks, giving rise to a presumption that plaintiff would suffer irreparable harm if injunctive relief was not granted).  By ignoring the present lawsuit, Defendants have shown a disregard for their infringing conduct and will likely continue such activities, whether on the Accused Product or other products.

Plaintiff requests an injunction in addition to monetary damages, as monetary damages alone are inadequate to legally prevent Defendants from infringing on any other of the Chrome Hearts Marks or continuing to use the CH Cross mark on any other product that Plaintiff has not yet identified.  While statutory damages are indeed a deterrence on such infringing conduct, without a Court order prohibiting Defendants from their infringing conduct, Defendants would technically be free to continue their infringement.

Considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted – while Plaintiff will suffer irreparable injury without an injunction, there would be no potential harm to Defendants, as an injunction would still allow Defendants to operate their business, albeit without the Accused Product. *See Cadence Design Sys., Inc. v. Avant! Corp.,* 125 F.3d 824, 829 (9th Cir. 1997) ("[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.")

Finally, injunctive relief serves the public interest by preventing confusion as to the validity of a product and in preventing the "misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir., 1983); *Microsoft Corp. v. Atek 3000 Computer Inc.,* 2008 U.S. Dist. LEXIS 56689 *15-17 (E.D.N.Y., 2008) ("[T]he public interest lies in the enforcement of the principles recognized by Congress in creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion").

As such, Plaintiff requests that this Court issue a permanent injunction against Defendants and their officers, agents, servants, employees, and any persons in active concert or participation with them, permanently restraining and enjoying them from further infringement of the CH Cross mark and from unfairly competing with Plaintiff, either directly or contributorily in any manner.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter default judgment in the amount of $105,599.99 against Defendants, in addition to the issuance of a Permanent Injunction against Defendants.

Dated:  July 25, 2023            BLAKELY LAW GROUP

By:    */s/ Tara A. Currie*
          Brent H. Blakely
          Tara A. Currie
          ***Attorneys for Plaintiff***
          ***Chrome Hearts LLC***