UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1777 JGB (SHKx)** | Date | August 31, 2023 |
|---|---|---|---|
| Title | *Chrome Hearts LLC v. Urban Survival Gear USA, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiff's Motion for Default Judgment (Dkt. No. 19); and (2) VACATING the September 11, 2023 Hearing (IN CHAMBERS)

　　Before the Court is Plaintiff Chrome Hearts LLC's motion for default judgment. ("Motion," Dkt. No. 19.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion. The September 11, 2023 hearing is **VACATED**.

## I.   BACKGROUND

　　On October 21, 2021, Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") filed a complaint against Defendants Urban Survival Gear USA ("Urban Survival Gear"), Michael Page ("Page"), and Does 1-10 (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) The Complaint asserts claims for (1) trademark infringement, (2) false designation of origin and false descriptions, (3) unfair competition in violation of California Business & Professional Code § 17200, et seq., and (4) common law trademark infringement and unfair competition. (Id.)

　　On November 9, 2021, Urban Survival Gear was properly served with the Complaint, Summons, and all other required case-initiating documents. (See "Urban Survival Gear Proof of Service," Dkt. No. 12.) Specifically, a process server personally delivered the documents to Page, a person authorized to receive service of process for Urban Survival Gear. (See id.)

Pursuant to Federal Rule of Civil Procedure 12(a),[1] Urban Survival Gear's responsive pleading was due no later than November 30, 2021. To date, Urban Survival Gear has not filed a responsive pleading. As a result, on March 24, 2022, Plaintiff filed a request for entry of default against Urban Survival Gear. (Dkt. No. 16.) On March 24, 2022, the Clerk of this Court entered default against Urban Survival Gear. ("Entry of Default," Dkt. No. 17.)

On November 9, 2021, Page was properly served with the Complaint, Summons, and all other required case-initiating documents. (See "Page Proof of Service," Dkt. No. 11.) Specifically, a process server personally delivered the documents to Page. (See id.) Pursuant to Rule 12(a), Page's responsive pleading was due no later than November 30, 2021. To date, Page has not filed a responsive pleading. As a result, on March 24, 2022, Plaintiff filed a request for entry of default against Page. (Dkt. No. 16.) On March 24, 2022, the Clerk of this Court entered default against Michael Page. (Entry of Default.)

On July 25, 2023, Plaintiff filed this Motion for default judgment against Defendants. (Motion.) Plaintiff seeks $100,000 in damages, $5,599.99 in costs, and permanent injunctive relief. (See id. at 17, 18.)

## II. LEGAL STANDARD

Pursuant to Rule 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b). Under Local Rule 55-1, a party moving for default judgment must also file a declaration that conforms to Rule 55(b) and sets forth the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55-1.

Whether to enter default judgment is within the court's sound discretion court. Aldabe v. Aldabe, 616 F.2d 1089, 1092–93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth seven factors to consider when determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)

---

[1] All subsequent references to "Rule(s)" refer to the Federal Rules of Civil Procedure, unless otherwise specified.

> whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471–72 ("Eitel factors"). Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Sys. Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of her damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. DISCUSSION

Plaintiff seeks monetary relief in the total amount of $105,599.99 and permanent injunctive relief. (See Motion at 17–19.) In order for default judgment to be entered, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in its favor. The Court considers these factors below.

#### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment. Pursuant to Rule 55, Plaintiff did not move for default judgment until after the Clerk entered default against Defendants. Plaintiff submitted a declaration of attorney Tara A. Currie with the information required by Local Rule 55-1. ("Currie Decl.," Dkt. No. 21.)

#### B. Eitel Factors

##### 1. Possibility of prejudice to plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgement. Because Defendants have not appeared in this action, a default judgment is the only means by which Plaintiff may obtain relief. Absent a default judgment by this Court, Plaintiff would "be forced to continue the litigation even though no party has filed an answer or a claim." United States v. Approximately $194,752 in U.S. Currency, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011). Therefore, this factor weighs in favor of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding that the plaintiff would suffer prejudice absent the entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

##### 2. Substantive merits of plaintiff's claims

The second and third Eitel factors concern the merits of Plaintiff's substantive claims, and the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may

recover.'" <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (alteration in original) (citation omitted). Plaintiff seeks default judgment against Defendants for: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114, (2) false designation of origin and false descriptions under 15 U.S.C. § 1125(a), (3) unfair competition under Cal. Bus. & Prof. Code § 17200, <u>et seq.</u>, and (4) common law trademark infringement and unfair competition claims. (<u>See</u> Motion.)

A defendant infringes on a trademark when, without the consent of the registered trademark holder, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on claims for false designation of origin under the Lanham Act (which addresses federal trademark law), a plaintiff must show that a defendant uses a word, term, name, symbol, device, or false designation of origin in commerce in connection with goods or services, and that such use "is likely to cause confusion or . . . mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

Infringement claims brought under 15 U.S.C. §§ 1114 and 1125, Cal. Bus. & Prof. Code § 17200, and common law trademark infringement and unfair competition are subject to the same test: "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted). To find a "likelihood of confusion," neither actual confusion nor intent is necessary. <u>See</u> <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1178 (9th Cir. 1998).

Here, Plaintiff alleges that since 1988, it has been designing, manufacturing, and selling artistically styled leather goods, apparel, jewelry, and accessories. (Complaint ¶ 10.) Plaintiff is the rightful owner of the "Chrome Hearts" word mark, various design-only marks, and composite trademarks compromising the Chrome Hearts mark and design components, including the following federal trademark registrations (collectively, "Chrome Hearts Marks"):

> U.S. Trademark Registration Number 3,605,860 appearing on jewelry, namely, rings, earrings, pendants, necklaces, bracelets, cuff bracelets, cuff links, watch bracelets and key rings made of precious metals.

(<u>Id.</u> ¶ 18.) This registration is valid, subsisting, and incontestable. (<u>Id.</u> ¶ 20.)

Plaintiff has devoted substantial time, effort, and money to designing, developing, advertising, promoting, and marketing its products, and spends on average over $1 million per year on advertising, promoting, and marketing the Chrome Hearts brand. (<u>Id.</u> ¶ 19.) As a result, Plaintiff has sold over a billion dollars' worth of clothing, all bearing one or more of the Chrome Hearts Marks. (<u>Id.</u>) The Chrome Hearts Marks have achieved a high degree of consumer recognition and constitute famous marks. (<u>Id.</u> ¶ 20.) The Chrome Hearts Marks are nationally

recognized as being affixed to goods and merchandise of high quality. (Id. ¶ 32.) Due to Plaintiff's long use, extensive sales, and significant advertising and promotional activities, the Chrome Hearts Marks have also achieved widespread acceptance and recognition amongst the consuming public and trade throughout the United States. (Id. ¶ 23.)

Defendants have manufactured, produced, marketed, distributed, advertised, offered for sale, and/or sold jewelry and accessories that bear marks identical and/or confusingly similar to one or more Chrome Hearts Marks ("Accused Products"). (Id. ¶ 24.) Defendants promote, market, and sell jewelry and accessories through their website, as well as on social media such as Instagram and Facebook. (Id. ¶ 25.) Plaintiff has not granted a license or given Defendants permission to use the Chrome Hearts Marks in any way. (Id. ¶ 28.) The Accused Products bear identical or confusingly similar reproductions of one or more Chrome Hearts Marks that are likely to lead to and result in consumers believing that Chrome Hearts produced, sponsored, authorized, licensed, or is otherwise connected or affiliated with Defendants' commercial activities, to the detriment of Plaintiff. (Id. ¶ 34.) Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods and to reap the benefit of the goodwill associated with the Chrome Hearts Marks. (Id. ¶ 36.) As a direct and proximate result of Defendants' infringing conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined from advertising and selling the Accused Products. (Id. ¶ 37.)

Based on these factual allegations, the Court finds Plaintiff's Complaint sufficient. Plaintiff has adequately pled violations under the Lanham Act. Thus, this factor weighs in favor of default judgment.

### 3. Sum of money at stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks a total monetary judgment of $105,599.99, consisting of $100,000 in statutory damages and $5,599.99 in attorneys' fees. (See Motion at 17–18.) Under the Lanham Act, the Court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). "[I]f the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit market per type of goods or services sold, offered for sale, or distributed, as the court considers just." Id. Here, Plaintiff acknowledges "there is one type of good—a bracelet—containing one imitation [Chrome Hearts Mark]." (Motion at 12.) The Court finds that Plaintiff's request for damages is commensurate with its statutory rights under the Lanham Act. However, as discussed below, the Court reduces the requested damages award to prevent a windfall. Nevertheless, this factor favors default judgment.

//
//
//

4. **Possibility of dispute concerning material facts**

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Ent. Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because Defendants have not appeared in this action or asserted any defenses, it is unlikely that disputes as to material facts will arise. This factor favors default judgment.

5. **Whether default was due to excusable neglect**

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan, 23, 2012). Here, Defendants were properly served with the Complaint and Summons on November 9, 2021. (See Urban Survival Gear Proof of Service Proof of Service; Page Proof of Service.) Accordingly, the Court concludes that Defendants' default is not the product of excusable neglect. This factor weighs in favor of default judgment.

6. **Policy favoring decision on the merits**

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, where a defendant fails to appear and respond, default judgment is appropriate. Wecosign, 845 F. Supp. 2d at 1083. Here, Defendants' failure to appear or defend against this action renders a decision on the merits impracticable. Therefore, this factor favors default judgment.

On balance, the Eitel factors weighs in favor of granting the Motion.

**C. Requested Relief**

Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove up" the amount of damages. Aifang v. Velocity VIII, L.P., 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).

1. **Monetary relief**

Plaintiff seeks a total monetary judgment of $105,599.99, consisting of $100,000 in statutory damages and $5,599.99 in attorneys' fees. (See Motion at 17–18.) Under the Lanham Act, a plaintiff may elect to recover an award of statutory damages for an action involving the use

of a counterfeit mark at any time before final judgment is entered. 15 U.S.C. § 1117(c). Specifically, Section 1117(c) provides for the following statutory damages:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Id. The Court accepts as true Plaintiff's allegations that Defendants' infringement was willful. (See Complaint ¶¶ 36, 61); see Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true, including the allegation of [defendant's] willful infringement of [plaintiff's] trademarks.").

"District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum." Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1101 (N.D. Cal. 2014); accord Coach Servs., Inc. v. YNM, Inc., 2011 WL 1752091, at *5 (C.D. Cal. May 6, 2011). In determining the appropriate amount of statutory damages to award on default judgment, courts consider whether the amount of damages bears a "plausible relationship to Plaintiff's actual damages." Yelp, 70 F. Supp. 3d at 1002 (quoting Adobe Sys., Inc. v. Tilley, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall. Id.; see, e.g., Tilley, 2010 WL 309249, at *5–6 (reducing request for $250,000 in statutory damages for the willful infringement of five trademarks to $50,000).

Here, the Court finds that awarding Plaintiff $100,000 for "one type of good—a bracelet—containing one imitation" would be a windfall. (Motion at 12.) Although Plaintiff could not conduct discovery to determine its damages, that, in itself, does not warrant imposing such a high amount in statutory damages. See Yelp, 70 F. Supp. 3d at 1103. In a letter to Plaintiff's counsel that was not previously submitted to the Court, Page claims that he is "not a huge company" and his "annual personal earnings average 60 to 70K a year." (See Currie Decl. Ex. D.) Page also claims that he "immediately removed the bracelet from any and all sites, marketplaces, etc. pending further advice from the court." (Id.) Plaintiff has only provided evidence of one sale of an infringing mark by Defendants. (See Curie Decl. Ex. G.) The Court finds that a statutory award of $10,000, along with the injunctive relief discussed below, is sufficient to compensate Plaintiff and to deter Defendants and others from engaging in similar behavior. Thus, the Court **GRANTS** statutory damages but reduces the amount to $10,000.

In addition to statutory damages, Plaintiff seeks an award for attorneys' fees. (See Motion at 17–18.) Although Section 1117(a) allows for an award of attorneys' fees "in exceptional cases," Plaintiff if seeking statutory damages pursuant to Section 1117(c), which precludes an award of attorneys' fees. See K & N Eng'g, Inc. v. Bulat, 510 F.3d 1079, 1082 (9th

Cir. 2007). Plaintiff is ineligible for an award of attorneys' fees and costs. Thus, Plaintiff's request for attorneys' fees is **DENIED**.

### 2. Injunctive relief

Finally, Plaintiff seeks permanent injunctive relief. The Lanham Act gives the Court the "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); see Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003). Plaintiff requests that the Court issue permanent injunctive relief enjoining Defendants, their officers, agents, employees, and all persons or entities in active concert or participation with them from:

> (a) Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, and/or selling products which bear the Chrome Hearts Marks, or any marks/designs identical, substantially similar, and/or confusingly similar thereto.
>
> (b) Shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner items falsely bearing the Chrome Hearts Marks, or any reproduction, counterfeit, copy or colorable imitation thereof.
>
> (c) Using the Chrome Hearts Marks or any reproduction, counterfeit, copy or colorable imitation thereof in connection with the manufacture, importation, distribution, advertisement, offer for sale and/or sale of merchandise.
>
> (d) Passing off, inducing, or enabling others to sell or pass off any product or other items that are not Chrome Hearts' genuine merchandise as genuine Chrome Hearts merchandise.
>
> (e) Committing any other acts which falsely represents, or which has the effect of falsely representing that the goods and services of Defendants are licensed, authorized, offered, produced, or sponsored by, or are in any other way associated with Chrome Hearts; and
>
> (f) Assisting, aiding, or attempting to assist or aid any other person or entity in infringing any Chrome Hearts Marks or performing any of the prohibited activities referred to in paragraphs (a) to (e) above.

("Proposed Order," Dkt. No. 19-1.)

The Court finds that the proposed injunctive relief is appropriate because the claims otherwise warrant an injunction, and Defendants have chosen to ignore this lawsuit. Failure to

grant the injunction would needlessly expose Plaintiff to the risk of continuing irreparable harm. See Philip Morris USA, Inc., 219 F.R.D. at 502. Accordingly, the Court **GRANTS** Plaintiff's requested injunctive relief.

### IV. CONCLUSION

For the above reasons, Plaintiff's Motion for default judgment is **GRANTED**. Judgment shall be entered as follows:

1. Judgment is entered in favor of Plaintiff against Defendants in the amount of $10,000.

2. It is further ordered that a permanent injunction is issued against Defendants in accordance with the paragraphs above.

3. Plaintiff is **ORDERED** to mail a copy of this order and the judgment concurrently filed therewith to Defendants. Plaintiff shall file a proof of service with the Court within ten days of the date of this Order.

4. The September 11, 2023 hearing is **VACATED**.

5. The Clerk is directed to close the case.

**IT IS SO ORDERED.**